UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LAVANDA ANTOINETTE KILEY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:15-CV-00687-RDP** |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner of Social Security.** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Lavanda Kiley[1] ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed applications for a period of disability, DIB, and SSI on March 20, 2012, alleging disability beginning July 1, 2011. (R. 145-54).[2] The applications were denied on June 8, 2012. (R. 77-78). On June 21, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff's request was granted and a hearing was held on July 25, 2013. (R. 27-

---

[1] Plaintiff's first name is spelled several different ways throughout the record (*e.g.*, Lavanda, Lavoda, Lavonda). In this Memorandum, Plaintiff's name will be spelled in accordance with the spelling in the caption of the record—Lavanda.

[2] The Record will be cited to as (R. #).

58, 93-94, 115-41). In a decision dated August 23, 2012 by ALJ L. Raquel Bailey Smith, Plaintiff's applications for benefits were denied. (R. 8-21). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 1-4). Plaintiff now files a timely action for review in this court. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**II.     Facts**

At the time of the hearing Plaintiff was thirty-seven years old and had an 11th grade education. (R. 31, 214). She has two children. (R. 34). Her past work experience includes that of a receptionist, lunchroom worker, management assistant, cashier, and stock clerk. (R. 50-51). Plaintiff alleges that she is unable to work due to a pinched nerve in her neck which causes numbness in her legs. (R. 37). She also alleges that frequent lifting or bending causes sharp pains shooting down her legs. (R. 38).

Plaintiff's earliest medical records indicating pain in her hip and lower extremities are dated January 12, 2011, from UAB Hospital. (R. 276). Plaintiff alleged she woke up three days prior to the visit with numbness in her right leg making it hard to walk, and that her pain had been disabling for those three days. (*Id*.). The physician's notes indicate that in October 2011 Plaintiff had suffered similar symptoms and was given pain medication at Cooper Green Hospital with no relief.[3] (*Id*.). Plaintiff was not on any medications at this time. (*Id*.).

Upon physical examination, the physician rated Plaintiff's leg strength a 5/5 on the left and 4/5 on the right, noting that the discrepancy in strength in the left was likely due to pain rather than actual weakness. (R. 277). Plaintiff also had a 5/5 motor function, sensation was intact to soft touch; and she had a normal gait (normal stride). (*Id*.). The physician determined

---

[3] The current Record only shows one visit to Cooper Green Hospital prior to January 2011. The visit was on July 6, 2009, indicating Plaintiff complained of facial numbness. (R. 263). A head CT was performed and did not reveal any abnormalities. (*Id*.).

that Plaintiff likely had a pinched or compressed nerve in her upper thigh (Sciatic) or lower back (lumbar), also known as radiculopathy. (*Id*.). The physician recommended that Plaintiff have an MRI in the next few days, but stated that the situation was not an emergency. Plaintiff was released in good condition. (*Id*.).

In April 2011, Plaintiff visited Cooper Green Hospital twice. During her first visit on April 13, the physician's notes indicate that she was having lower back pain and pain extending down her right leg that had been on-going for seven months. (R. 258). The physician noted that Plaintiff had a positive (abnormal) right straight leg raise.[4] (*Id.*). On April 25, during her second visit, an MRI was conducted and revealed a "severely degenerated circumferentially bulging disc" in the L5-S1 regions and a large broad based extrusion at the same level which "fill[ed] most of the spinal canal and compresse[d] the first sacral segment nerve root bilaterally more prominent on the right than the left." (R. 252). Plaintiff was prescribed several medications including Neurontin, Robaxin, and Lortab. (R. 251). On June 15, 2011, Plaintiff returned to Cooper Green Hospital for a follow-up appointment. (R. 257). The physician's notes report that Plaintiff's lower back and leg pain was still prevalent and that she was requesting stronger pain medication. (*Id.*). Plaintiff visited Cooper Green Hospital again on September 28, 2011, for a routine check-up. (R. 256). The medical records indicate that Plaintiff continued to take medications and that the medications "helped [her] back pain some." (*Id.*).

In October 2011, Plaintiff visited the Kirklin Clinic, complained of lower back pain while sitting and standing, and stated that the pain ran down her right leg to her foot. (R. 279). Plaintiff further indicated that her pain was worse when sitting as opposed to standing, and that

---

[4] The straight leg raise is an examination performed by a health care professional. The patient lies on their back with legs extended and then raises one leg. Raising the patient's leg stretches the Sciatic nerve—the nerve extending down the back of the leg—and if the patient feels pain, the pain is an indication that the nerves in the Sciatic nerve region are being pinched or compressed, which is an abnormality. In short, "positive" strait leg raise is a sign of abnormality.

3

she was experiencing numbness and tingling in the back of her right leg. (*Id.*). Upon examination, Plaintiff's motor function was rated a 5/5 throughout her body and she retained intact sensory response. (*Id.*). The physician examined Plaintiff's April 25, 2011 MRI and noted she had lumbar radiculopathy (pinched/compressed nerve in the lower back), accompanied by a herniated disc in the L5-S1 region. (R. 300). Because of these results, the physician believed Plaintiff's situation warranted corrective surgery. (*Id.*). Nevertheless, Plaintiff opted to wait and come back for a follow-up appointment. (*Id.*).

     Plaintiff returned to the Kirklin Clinic in October 2011, and was asked to reassess whether she wanted to continue conservative treatment or undergo corrective surgery. (R. 279). During this visit, Plaintiff told the physician the pain was growing worse and that she would have the corrective surgery. (*Id.*). The physician noted Plaintiff's strength was 5/5 throughout upper and lower extremities and her sensation was intact to fine touch. (*Id.*). Returning again to the Kirklin Clinic on February 24, 2012, the physician re-evaluated Plaintiff and noted an antalgic gait—walking in a manner so as to avoid pain—but Plaintiff still retained a 5/5 motor function. (R. 282). Surgery was scheduled, and on March 7, 2012, Plaintiff was admitted to the UAB Medical Center for a lumbar laminectomy and discectomy (*i.e.*, surgery to remove the bothersome disc in the lower back). (R. 268-75). The post-surgery evaluation showed that Plaintiff had "significant resolution" of her right extremity pain and that her pain was "well controlled" by the post-operation pain medications. (R. 286). She reported feeling good and was cleared for discharge and sent home in good condition. (*Id.*).

     Plaintiff was examined at the Kirklin Clinic on March 23, 2012, post-surgery. (R. 287). The physician's notes indicate that Plaintiff felt better for approximately three days after the surgery, but the pain had returned to its pre-operative level. (*Id.*). The physician was

"concerned" about Plaintiff's symptoms of radiculitis and prescribed a Medrol Dosepak and recommended physical therapy in order to relieve pain in her lower extremities. (*Id.*). Although Plaintiff again had an antalgic gait, the motor strength in her lower extremities was 5/5. (*Id.*).

On April 20, 2012, Plaintiff had another MRI at Cooper Green Hospital which showed nerve root compression and a degenerated circumferential bulging disc in the L5-S1 region. (R. 295). On May 4, 2012, Plaintiff returned to Kirklin Clinic for her post-operation check-up. (R. 296). During the physician's examination, Plaintiff showed 5/5 strength in her lower extremities and intact sensation. (*Id.*). Looking at Plaintiff's MRI, the physician noted a large recurrent disc in the L5-S1 region protruding to the right, causing nerve root compression and offered to "re-do" the earlier discectomy. (*Id.*). Plaintiff decided against a second surgery during this visit. (*Id.*). After April 2012, Plaintiff had few new developments in her pain symptoms but returned to Cooper Green Hospital several times.

In June 2012, the physician noted Plaintiff had an antalgic gait, positive strait leg raise, and numbness and pain in her right leg, as well as decreased sensations in her right foot. (R. 314). The imaging taken at this time indicated roughly the same issues in the L5-S1 region of Plaintiff's lower back. (*Id.*). The physician noted that Plaintiff needed surgery and the current medication was not enough to get her "quality of life back." (R. 314-15). In July 2012, the physician switched Plaintiff's medication from Morphine to Methadone. In September 2012, the physician noted that Plaintiff was "moving about better with the Methadone." (R. 306). The physician also observed that Plaintiff was stable on her present dosage of Neurontin and did not need an increase in dosage. (R. 307).

Plaintiff refilled her pain prescription in March 2013. The next month, Plaintiff's attending physician prescribed a cane for her leg numbness. Her physician noted that Plaintiff

had sustained a black eye due to an earlier fall down the stairs when her leg went numb. (R. 325). In May 2013, Plaintiff's dosage of pain medication was increased—while the medication worked, it did not last long enough and needed to be taken more frequently. (R. 324). The physician noted that Plaintiff's prime problem during this visit was that her ex-boyfriend had broken into her home, beaten her up, and stolen her medication and other belongings. (*Id.*).

During the July 25, 2013 hearing, the ALJ asked Plaintiff a series of questions to verify her work history. When asked why she stopped working on January 1, 2011, Plaintiff responded, "because I was in so much pain." (R. 42). Plaintiff stated that her boss subsequently offered to end her temporary employment—"[i]f you can't come in and work like you need to then I can end your job for you." (*Id.*). The ALJ further questioned Plaintiff as to the discrepancy between what she wrote on her disability report and her current testimony. (*Id.*). On her disability report, Plaintiff noted that she stopped working because her temporary job had ended. (R. 213). Plaintiff's disability report further stated that she stopped working in January 2011, but claimed that as of July 2011, she felt her conditions made her unable to work.[5] (*Id.*).

After her temporary job ended in 2011, Plaintiff testified that she filed for and received unemployment compensation for approximately six months. (R. 35-36). When the ALJ asked if she was looking for work during this time, Plaintiff responded, "No, ma'am, not really." When asked if she was required to look for work, Plaintiff responded, "Yes, ma'am, but I couldn't." (R. 36). And, when asked if she reported she had looked for work, Plaintiff responded, "No ma'am, they never asked me to report anything." (*Id.*).

---

[5] There was also some question about Plaintiff's responses given to questions about who lives with her. When asked if she lived with anyone, Plaintiff stated that she lived on her own. (R. 33). When asked how often her children were with her, Plaintiff responded that her children lived with her. (R. 34). When made aware of these discrepancies, Plaintiff responded that she meant to say, "I'm on my own." (*Id.*). On her function report, Plaintiff listed that she lived with her two children. (R. 220).

Plaintiff further testified that she is unable to work due to the pinched nerve in her back, which causes numbness in her legs almost every day, and she cannot bend or walk when she is experiencing numbness. (R. 37). Even when not experiencing numbness, she says she cannot lift or bend too much and when she does, she sometimes gets a sharp pain that shoots down her leg. (R. 38). Further, Plaintiff claims, it is hard to do anything because she is always hurting. (R. 38). She also testified that she takes medication for the pain but that the medication does not take the pain away completely; rather, it just stops the pain from throbbing as badly. (R. 39). When she has to stand, Plaintiff is able to stand for about ten to fifteen minutes at a time, but she can only sit for about thirty minutes at a time. (R. 43-44, 220). She also testified that the likelihood that her leg will go numb is higher now than it was in the past. (R. 44).

Plaintiff spends about seven to eight hours a day reclining while at home. (R. 43). When she does move around at home, it is to clean or cook simple meals for her children. When she is unable to cook, she usually skips meals. (R. 33). On her function report, Plaintiff stated that she is able to drive to the store for food and other needed items. (R. 223). However, when she does drive it has to be a short distance. (R. 35). She goes to her son's sporting events, but due to her pain it is only for short periods of time. (R. 34-35). At the time of the hearing, Plaintiff weighed approximately 180 pounds, down from 314 pounds in September 2012, though she claimed that this did not make a difference as to her pain. (R. 31, 307).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is

7

work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If it is determined that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. (*Id.*). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the

claimant can do given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined at step one that Plaintiff has not engaged in substantial gainful activity since July 1, 2011, her alleged onset date of disability. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, and obesity. At step three, the ALJ found that Plaintiff's severe impairments did not match or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ determined Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following exceptions: Plaintiff is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but may never climb ladders, ropes, or scaffolds; she must avoid uneven surfaces, unprotected heights, and hazardous machinery; she must be allowed to alternate between standing and sitting while remaining on task; she must work where there are no stringent production or speed requirements and thus may not perform fast pace assembly line work; she will be off task ten percent of the day; and she must be allowed to use a cane to ambulate as needed. (R. 16).

Nevertheless, the ALJ determined that Plaintiff's testimony as to the intensity, persistence, and limiting effects of her pain were not entirely credible for several reasons. First, while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were so debilitated. Second, although Plaintiff was given a cane by her physician, she ambulated independently into the hearing and stated that she uses the cane "just sometimes." (R. 45). That observation and Plaintiff's

testimony, the ALJ determined, undermined Plaintiff's allegations as to the frequency that her legs will go numb unpredictably, making her unable to walk. Third, the explanations given by Plaintiff as to why she stopped working in January 2011 were inconsistent and further undermined her credibility. Lastly, the ALJ found that because Plaintiff collected unemployment benefits for six months, this was necessarily an assertion that Plaintiff was ready, willing, and able to work during the period of time after her temporary job ended, and such an assertion is inconsistent with her hearing testimony.

As a result of these findings, the vocational expert determined that based upon Plaintiff's RFC, she could perform past relevant work as a receptionist and would not be inhibited greatly by her pain. Accordingly, the ALJ concluded that Plaintiff was not disabled between the dates of July 1, 2011, through August 23, 2013, the date of the ALJ's opinion.

## III.    Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ improperly discredited her testimony regarding the intensity, persistence, and limiting effects of her symptoms of pain and numbness. (Pl's Br. 4).[6] In particular, Plaintiff alleges four erroneous findings are unsupported by substantial evidence. She asserts that the ALJ erred in finding that (1) the "treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled" (Pl's Br. 4); (2) Plaintiff's testimony as to the frequency to which her legs go numb and render her unable to walk was not credible because Plaintiff walked independently into the hearing room and testified to not always using her cane (Pl's Br. 8); (3) Plaintiff's testimony about ending her temporary job in January 2011 was inconsistent and thus detracts from

---

[6] The "Brief in Support of Plaintiff's Position" will be cited to as (Pl's Br. #).

Plaintiff's credibility (Pl's Br. 9); and (4) Plaintiff's collection of unemployment benefits was a relevant factor in determining her physical limitations. (Pl's Br. 9).[7]

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's

---

[7] The specific reasons Plaintiff alleges error in the ALJ's findings may vary slightly, but they all focus around a lack of substantial evidence in support of the ALJ's reasoning.  Plaintiff alleges that the ALJ's first finding was erroneous because the ALJ mischaracterized certain medical records and failed to take into consideration all of the evidence.  Plaintiff alleges that the ALJ's second finding was erroneous because the finding was based on the observations at the hearing and failed to take into consideration all the evidence.  Plaintiff alleges that the ALJ's third finding was erroneous because the ALJ failed to take into consideration all of the medical records presented, and argues that the ALJ's fourth finding was improper because the ALJ should not have considered her use of unemployment compensation.

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

After careful review, and for the reasons stated below, the court concludes that Plaintiff's arguments miss the mark and the ALJ's decision is due to be affirmed.

### A.     Whether the Reasons Articulated by the ALJ for Discrediting Plaintiff's Testimony of Pain Are Supported by Substantial Evidence.

The initial question raised by Plaintiff's arguments on appeal is whether the ALJ properly applied the three-part pain standard when evaluating Plaintiff's subjective testimony of pain. A review of the record shows that there is substantial evidence supporting the ALJ's decision to discredit Plaintiff's testimony about her pain.

The three-part pain standard requires (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the pain, or (3) that the medically determined condition could reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When the first and third elements are met (as they are here), but the ALJ still finds a claimant's testimony regarding subjective accounts of pain to be implausible, the ALJ must articulate explicit and adequate reasons in support of that finding. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ does not give specific reasons for discrediting a claimant's testimony, the testimony is taken as true. *Holt*, 921 F.2d at 1223.

Plaintiff admits that the ALJ provided specific reasons for discrediting Plaintiff's testimony (Pl's Br. 4); therefore, this court is simply left with the task of assessing whether each reason is adequate. Whether an ALJ's reasons are adequate depends on whether there is

substantial evidence that support the findings behind the articulated reasons. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984).

> **a. Whether Plaintiff's Treatment Records Fail to Reveal the Type of Significant Clinical and Laboratory Abnormalities One Would Expect if Plaintiff Were in Fact Disabled.**

Plaintiff's argues that the ALJ erred in finding that her treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were in fact disabled. Specifically, Plaintiff argues that "the ALJ mischaracterized the evidence which is replete with objective testing supporting [her] allegations of disabling pain and limitations." (Pl's Br. 5). Further, Plaintiff asserts that substantial evidence does not support the ALJ's finding. The court disagrees.

> **i. Whether the ALJ mischaracterized evidence.**

An ALJ must follow certain guidelines when considering evidence related to the limiting effects of a claimant's pain. "In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." 20 C.F.R. §§ 404.1529(a), 416.929(a). Objective medical evidence is useful and plays a role in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). An ALJ can be found to have mischaracterized medical evidence when she fails to mention any parts of the medical evidence that are material to the case. *See Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 264 (11th Cir. 2008); *Hoffman v. Astrue*, 259 F. App'x 213, 217 (11th Cir. 2007). "The ALJ cannot pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F.Supp. 2d 1253, 1258 (N.D. Ala. 2009).

In the present case, in order to determine whether Plaintiff had an impairment capable of producing the kind of pain complained of, the ALJ reviewed the treatment records as required in step two of the three-part pain standard. In discussing the MRIs, the ALJ characterized Plaintiff's treatment records in substantially the same fashion as did Plaintiff in her brief (indeed, almost word for word). The ALJ's discussion on the results of the physical examinations during each of Plaintiff's visits are listed just as they are in the record. What the ALJ did omit during this portion of the opinion, and perhaps what Plaintiff takes issue with, is a reference to the subjective reports of Plaintiff during each visit. (*See* R. 17-18). But such an omission does not indicate mischaracterization here because this portion of the ALJ's opinion makes clear that it sets forth an analysis of the objective medical evidence required to meet the second step of the three-part pain standard. (*See* R. 16). In other words, the ALJ was addressing the objective medical evidence; there was no reason to address subjective evidence in that part of the opinion.

        ii.        **Whether substantial evidence supports the ALJ's conclusion as to the medical records.**

Plaintiff next argues that no substantial evidence exists in favor of the ALJ's reason for discrediting Plaintiff's testimony. This argument fails to cut ice. The ALJ acknowledged that some pain was to be expected based on the information contained in the treatment records, but not pain to the extent that it would become disabling. In reviewing the treatment records and the ALJ's decision, this court does not reweigh the evidence and gives deference to the factual determinations of the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

Here, the ALJ made the following findings: Plaintiff maintained 5/5 strength during almost every visit; although it was recommended that she have surgery, she opted for

conservative care by medication; before she decided to have surgery, Plaintiff's gait had always been normal, and after her surgery, even though her gait was then abnormal, she retained 5/5 strength; upon being offered another corrective surgery, Plaintiff opted for conservative care instead; Plaintiff was not given a cane for her leg numbness until roughly her latest visit with a physician; and that around her latest visit, Plaintiff's medication had the ability to control her pain. These findings are supported by substantial evidence. Therefore, this court can find no error.

> **b.  Whether the ALJ's Determination to Discredit Plaintiff's Testimony Concerning the Intensity, Persistence, and Limiting Effects of Her Pain and Leg Numbness is Supported by Substantial Evidence.**

Plaintiff next argues that the ALJ provided three inadequate reasons for discrediting her subjective testimony regarding the intensity, persistence, and limiting effects of her pain. This argument fails for at least three reasons. First, the ALJ's credibility findings are consistent with Eleventh Circuit case law. Second, the ALJ did not improperly consider the evidence in the record. Finally, contrary to Plaintiff's assertions, the reasons provided by the ALJ for discrediting Plaintiff's testimony are supported by substantial evidence.

Even when an ALJ finds that Plaintiff's medical conditions could not create the severity of pain she alleged, she must still consider Plaintiff's subjective testimony of pain. Reliance on objective medical evidence alone does not suffice when rejecting a claimant's subjective testimony regarding pain. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to the treatment records, the ALJ explicitly gave three reasons in support of the decision to discredit Plaintiff's testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) (credibility determination was proper where an ALJ articulated three specific reasons for discrediting subjective testimony). First, the ALJ expressly stated that Plaintiff ambulated into the hearing

15

without a cane and testified that she does not always use her cane. On this point, Plaintiff correctly argues an ALJ may not rely solely on observations made during a hearing. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). However, an ALJ is allowed to consider her observations, in combination with other things, of a claimant in assessing the credibility of the claimant's allegations. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii), (4); S.S.R. 96-7p. Plaintiff's argument fails here because the ALJ's findings make clear that she relied on not only her observations but also actual testimony and medical records.

Second, the ALJ pointed to Plaintiff's own inconsistent testimony as to why she stopped working several months before her alleged onset date. Plaintiff's application for disability stated that she stopped working in January 2011 because her temporary job had ended. During the hearing, Plaintiff testified that the real reason was due to pain. The ALJ pointed out these inconsistencies. Thus, substantial evidence supports the ALJ's credibility determination. Again, in reviewing the ALJ's findings, this court does not reweigh the evidence. *Dyer*, 395 F.3d at 1210.

Finally, the ALJ found that Plaintiff's collection of unemployment benefits for six months after she stopped working served as an implicit indication that she was able to work. Plaintiff argues that she cannot be denied disability benefits merely because she has received unemployment compensation. But this argument misses the mark. As discussed above, this was not the only reason the ALJ gave for denying Plaintiff's disability claim.

Moreover, the support for considering unemployment as a factor is found in the "other factors concerning your functional limitations" section of the disability regulations. 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii). This evidence is relevant to discovering functional

16

limitation because collecting unemployment benefits requires in part that the applicant be "physically and mentally able to perform work of a character which [s]he is qualified to perform by past experience or training. . . ." Ala. Code § 25-4-77(a)(3). For this reason, and the other reasons stated above, this court finds that the ALJ did not err in failing to credit Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her pain.

### VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 23, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE